**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| HILL EQUIPMENT MANUFACTURING, INC., | ) ) | |
|       **Plaintiff and Counterclaim Defendant,** | ) ) ) | |
| | ) | |
| v. | ) ) | |
| LORRY MARSHALL, | ) ) | |
|       **Defendant, Counterclaim Plaintiff, and Third-Party Plaintiff,** | ) ) ) ) | **Case No. 08-CV-299-TCK** |
| and | ) ) | |
| MARSHALL CONSULTING, LLC, | ) ) | |
|       **Third-Party Plaintiff,** | ) ) | |
| v. | ) ) | |
| HILL MANUFACTURING, INC., CHERYL J. HILL, and WEATHERS MACHINE, INC., | ) ) ) | |
| | ) | |
|       **Third-Party Defendants.** | ) | |

**OPINION AND ORDER**

Before the Court is Plaintiff Hill Equipment Manufacturing, Inc.'s Motion to Dismiss

Defendant Lorry Marshall's Counterclaims and the Third-Party Complaint (Doc. 37); and Third-

Party Defendants Hill Manufacturing, Inc., Cheryl Hill, and Weathers Machine, Inc.'s Motion to

Dismiss Defendant's Third-Party Petition (Doc. 38).

**I.      Factual Background**

The following facts are taken from the Counterclaim and Third-Party Complaint filed by

Lorry Marshall and Marshall Consulting, LLC (collectively "Marshall") against Hill Equipment

Manufacturing, Inc. ("HEMI"), Hill Manufacturing, Inc. ("HMI"), Weathers Machine, Inc. ("Weathers Machine"), and Cheryl Hill ("Hill") (collectively "Hill Defendants")[1] and the documents attached thereto.

### A.     Sale of Saw Patent

Marshall invented the Marshall Tree Saw ("Saw") during the 1990s. Sometime during 2001, Marshall was introduced to Hill and they discussed Hill's purchase of the Saw patent and manufacturing plans. Marshall sold the Saw patent to Weathers Machine, Inc. ("Weathers Machine"), Hill's company, for approximately $2.5 million. Five documents were executed between the parties to memorialize the sale of the Saw patent, outlined below. These five documents are collectively referred to as "the Agreement" for the purposes of this Order.

#### 1.     Confidentiality Agreement

On May 22, 2002, Marshall and HMI entered into a confidentiality agreement, wherein HMI agreed to "hold in confidence any and all information" concerning the Saw.

#### 2.     Purchase and Sale Agreement

Four months later, on September 25, 2002, Marshall and Weathers Machine executed a Purchase and Sale Agreement, which provided for Weathers Machine's purchase of the Saw patent and for $50,000 payable to Marshall upon notice of the release of all liens on the patent. The Purchase and Sale Agreement also stated that Marshall would provide Weathers Machine with the manufacturing standards and specifications for the Saw and that Marshall would have "right to first refusal" in the event Weathers Machine decided to sell the patent at any time within ten years.

---

[1] Marshall's Counterclaim and Third-Party Complaint alleges that HEMI, HMI, and Weathers Machine are alter egos of Hill.

### 3.    Promissory Note

Also on September 25, 2002, the parties executed a Promissory Note.  At the time of the sale

of the Saw, Marshall owed $307,000 to the Purdam State Bank in Purdam, Nebraska.  Pursuant to

the Promissory Note, Weathers Machine agreed to pay the note due to Purdham State Bank on

behalf of Marshall in consideration for the obtaining of a release of all liens on the Saw patent.  Any

payments made to Marshall under the Consulting Agreement (outlined below) were to be applied

as payment on the note.

### 4.    Consulting Agreement

Marshall additionally entered into a Consulting Agreement with Weathers Machine on

September 25, 2002.   The Consulting Agreement provided that Marshall would serve as an

independent sales consultant and/or manufacturing consultant to Weathers Machine.  In exchange,

certain royalties would be paid to Marshall.

### 5.    Assignment of the Saw Patent

Finally, on October 7, 2002, Marshall and Weathers Machine executed an Assignment,

whereby Marshall assigned his rights in the Saw patent to Weathers Machine.

**B.    Claims Asserted**

On April 14, 2008, HEMI filed suit against Marshall in Tulsa County, alleging that Marshall

had not paid the entirety of the Promissory Note and was therefore in default of said obligation.

Specifically, HEMI alleged that Marshall owed $262,972.02 plus interest accrued.  The suit was

thereafter removed to this Court.

Marshall filed a Counterclaim and Third-Party Complaint against HEMI, HMI, Weathers

Machine, and Hill, alleging: (1) fraudulent inducement to contract ("Count 1"); (2) fraudulent

3

inducement to assign the saw patent ("Count 2"); (3) anticipatory breach of executory contract ("Count 3"); (4) breach of contract: failure to perform the contract with care and skill ("Count 4"); (5) breach of contract: breach of duty of good faith and fair dealing ("Count 5"); (6) breach of contract: duty to exercise "best efforts" to see that Marshall received the benefit of their bargain ("Count 6"); (7) breach of contract: wrongful assignment ("Count 7"); (8) fraud ("Count 8"); (9) direct liability of Hill for the wrongdoing of HEMI and HMI ("Count 9"); (10) alter ego (instrumentality) ("Count 10"); (11) alter ego (scheme to perpetuate a fraud) ("Count 11"); (12) accounting ("Count 12"); and (13) quantum meruit ("Count 13"). Attached to Marshall's Counterclaim and Third-Party Complaint are: (1) the Confidentiality Agreement; (2) the Purchase and Sale Agreement; (3) the Promissory Note; (4) the Consulting Agreement; and (5) the Assignment. For the purposes of this Order, the Court will refer to Counts 3, 4, 5, 6, 7, 9, 12 and 13 as "breach of contract claims" and Counts 1, 2, 8, 9, 10, 11, and 12 as "fraud claims."[2]

HEMI moves to dismiss all counterclaims alleged against it by Marshall. Specifically, HEMI argues: (1) Marshall's breach of contract claims fail to state a claim upon which relief can be granted because Marshall has admitted failure to perform obligations under the Agreement; and (2) Marshall's fraud claims fail to plead fraud with particularity as required under Federal Rule of Civil Procedure 9(b) ("Rule 9(b)"). By separate motion, HMI, Hill, and Weathers Machine also move to dismiss the claims asserted against them by Marshall. Specifically, HMI, Hill, and Weathers Machine adopt and incorporate the arguments presented by HEMI and further argue that Marshall's fraud claims are barred by the applicable statute of limitations.

---

[2] Because Counts 9 and 12 are seemingly based on Marshall's breach of contract and fraud allegations, the Court considers these counts to be in both groups.

## II.       Breach of Contract Claims

In considering a motion to dismiss under Rule 12(b)(6), the Court "assume[s] the truth of the plaintiff's well-pleaded factual allegations and view[s] them in the light most favorable to the plaintiff." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). The inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). In order to survive a Rule 12(b)(6) motion to dismiss, a plaintiff must "'nudge [ ] [his] claims across the line from conceivable to plausible.'" *Schneider*, 493 F.3d at 1177 (quoting *Twombly*, 550 U.S. at 570). Thus, "the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Schneider*, 493 F.3d at 1177.

The Tenth Circuit has interpreted "plausibility," the term used by the Supreme Court in *Twombly*, to "refer to the scope of the allegations in a complaint" rather than to mean "likely to be true." *Robbins v. Okla. ex rel. Okla. Dep't of Human Servs.*, 519 F.3d 1242, 1247 (10th Cir. 2008). Thus, "if [allegations] are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Id.* (internal quotations omitted). "The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief." *Id.* "This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them." *Id.* at 1248. In addition, the Tenth Circuit has stated that "the

degree of specificity necessary to establish plausibility and fair notice, and therefore the need to include sufficient factual allegations, depends on context" and that whether a defendant receives fair notice "depends on the type of case." *Id.*

In support of dismissal of Marshall's breach of contract claims, Hill Defendants argue that Marshall is unable to bring such claims because the allegations included in Marshall's Counterclaim and Third-Party Complaint "admit" to Marshall's breach of the Agreement in several respects. Specifically, Hill Defendants argue that the allegations included in Marshall's Counterclaim and Third-Party Complaint demonstrate that: (1) Marshall's contacts with HEMI customers violated the Consulting Agreement; (2) Marshall failed to pay the Promissory Note according to its terms; (3) Marshall did not comply with the remedy outlined in the Purchase and Sale Agreement regarding complaints about the quality of the Saws manufactured by HEMI; and (4) Marshall sued HEMI for selling the Saw Patent despite the fact that "HEMI had every right to do [so] under the . . . Agreement." (HEMI's Mot. to Dismiss 8.)  Therefore, according to Hill Defendants, Marshall cannot state any claims for breach of contract.

The Court finds Hill Defendants' position misplaced, as their entire argument is premised on their interpretation of Marshall's allegations rather than a clear admission from Marshall. Adoption of Hill Defendants' position would necessarily require the Court to draw inferences in favor of Hill Defendants and against Marshall.  Because the Court is bound by the applicable Rule 12(b)(6) standard, however, the Court must view the allegations in the light most favorable to Marshall. *See Schneider*, 493 F.3d at 1177.  Viewing said allegations in this light, the Court is unwilling to find that Marshall "admitted" to breaching the Agreement in the Counterclaim and Third-Party Complaint so as to bar any claims based on breach of contract.  A reading of the

6

Counterclaim and Third-Party Complaint contains no such admission; rather, Hill Defendants are extrapolating this "admission" in an effort to limit Marshall's claims against them. The Court therefore declines to dismiss Marshall's breach of contract claims on such a basis.

### III.   Fraud Claims

Hill Defendants first move for dismissal of Marshall's fraud claims because Marshall has not pled such claims with the requisite particularity under Rule 9(b). Rule 9(b) provides as follows: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Under Rule 9(b), a complaint must identify the time, place, and content of each allegedly fraudulent representation or omission, identify the person responsible for it, and identify the consequences therof. *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000). "Rule 9(b)'s purpose is to afford defendant fair notice of plaintiff's claims and the factual ground upon which [they] are based . . . ." *Id.* (citing *Farlow v. Peat, Marwick, Mitchell & Co.*, 956 F.2d 982, 987 (10th Cir. 1992)).

#### A.   Allegations of Fraud in the Counterclaim and Third-Party Complaint

The Court finds the following allegations relevant to Marshall's claims of fraud:

Marshall . . . believed the many misrepresentations made by Hill which led him to believe that she could successfully take over the manufacturing and marketing of the Saw.[3]

After Hill and Marshall agreed upon the sale price, further negotiations took place regarding the method of payment. . . . However, the method by which Hill and Weathers Machine proposed to pay for the Saw was fraudulent and constructed by Hill so that Marshall would repay Hill and Weathers Machine for monies advanced

---

[3] (Counterclaim and Third-Party Compl. ¶ 15.)

7

to Marshall as part of the purchase price, and Weathers Machine would have to pay Marshall only when Saws were sold.[4]

Hill also wanted a clause in the Agreement which would provide for termination of all payments due to Marshall upon his death. Marshall refused to sign an agreement with such a provision in it.  After two weeks of arguing with Hill about this provision, she finally agreed to remove the offending provision, and Marshall believed that it had been removed.  He only discovered a few months ago that Hill had merely moved the "death" provision to the paragraph containing the right of first refusal in the Purchase and Sale Contract.  He would never have agreed to sell the Saw had he realized that the "death" provision had been included in the Agreement.[5]

Hill fraudulently induced Marshall to assign the Saw Patent to Weathers Machine as she needed it for collateral on a loan she was seeking.[6]

Prior to signing the Agreement and on several occasions thereafter, Marshall asked Hill whether he was going to have to pay on the Note. Each time Hill said "No," and stated that the purpose of the Note was to satisfy auditors in the event of an audit. The first occasion upon which Hill advised Marshall that he was liable on the Note was in February 2008.[7]

To induce Marshall to sell the Saw business to her, Hill falsely represented to Marshall that her company, Weathers Machine, had advertising and marketing skills, the experience, and personnel to sell 2-3 times as many Saws as Marshall had sold. Marshal and Marshall Consulting relied upon these representations in entering to the Agreement.  However, this representation was false at the time it was made.  Not only were the Defendants unable to sell more Saws than Marshall had sold prior to their purchase of the Saw business, but also they ruined Marshall's superb business reputation for excellence.[8]

Although the Consulting Agreement provided that Marshall Consulting would serve as a sales representative to solicit orders for the Defendants, after the Agreement was signed, the Defendants intentionally prohibited Marshall and Marshall Consulting from soliciting orders.  Instead, Hill hired her brother and her son to act as her sales

---

[4]   (*Id.* ¶ 17.)

[5]   (*Id.* ¶ 18.)

[6]   (*Id.* ¶ 25.)

[7]   (*Id.* ¶ 26.)

[8]   (*Id.* ¶ 28.)

8

representatives. These two individuals lacked the ability to market and sell the Saw. In addition, they knew little or nothing about machinery in general and the Saw in particular, and were uninterested in learning enough about the Saw and about marketing to be successful as sales representatives. Although these two individuals were eventually replaced with a single individual, he was equally unqualified to market and sell the Saw.[9]

Defendants fraudulently represented to Marshall prior to entering into the Agreement that they had the capability to handle increased advertising, which was untrue.[10]

To induce Marshall to sell the Saw business to her, Hill falsely represented to Marshall that she had or would acquire the equipment and personnel necessary to manufacture and assemble the Saw in-house. However, after she was unable to sell the Saw business as she had anticipated, Hill farmed out the manufacturing of the Saw except for one or two parts. [11] [12]

---

[9] (*Id.* ¶ 29.)

[10] (*Id.* ¶ 36.)

[11] (*Id.* ¶ 40.)

[12] In addition to the paragraphs cited herein, Marshall cites to paragraph 22(a) as containing information relevant to "the nature of the fraudulent representations made by Hill prior to signing the Agreement" and to paragraphs 41-45 as containing information regarding "Marshall's reliance on Hill's misrepresentations." (*See* Combined Resp. to Mots. to Dismiss 13.) The Court is unclear as to how these cited paragraphs relate to Marshall's claims of fraud, however. Specifically, paragraph 22(a) outlines the terms of the Promissory Note as set forth therein and does not mention any allegedly fraudulent misrepresentations. Further, paragraphs 41-45 detail changes made to the Saw by Hill Defendants, which, according to Marshall, negatively impacted the performance of the Saw. These paragraphs have no apparent relation to "Marshall's reliance on Hill's misrepresentations," as claimed by Marshall. (*Id.*) Accordingly, the Court will not consider paragraphs 22(a), 41, 42, 43, 44, and 45 when assessing the sufficiency of Marshall's allegations of fraud under Rule 9(b).

Further, Marshall maintains that paragraphs 30-33 allege "[Marshall] was induced to enter in the Consulting Agreement by Ms. Hill's fraudulent representations that Marshall would serve as a sales representative to solicit orders." (Pl.'s Surreply 3.) Marshall's characterization of these paragraphs is somewhat misleading, as these portions of the Counterclaim and Third-Party Complaint do not contain any allegations of fraudulent misrepresentations but instead include details regarding Marshall's role under the Consulting Agreement. Although Marshall might contend that this role was limited or not in accordance with the Agreement, the cited paragraphs do not contain any allegations of fraudulent conduct so as to make them relevant to the Court's Rule 9(b) analysis.

(footnotes added.)

The individual fraud claims all incorporate the above allegations.  Further, Counts 1, 2 and 8 generally allege that Hill Defendants made material representations that were known to be false, or made recklessly without knowledge of the truth, and that such false representations were made with the intention that they would be relied upon and were relied upon by Marshall.  (*See id.* at ¶¶ 65-69 (Count 1), 70-74 (Count 2), & 98-102 (Count 8).)  Count 10 alleges that Hill knowingly and intentionally used HEMI and HMI as an instrumentality that caused fraud upon Marshall, (*see id.* at ¶¶ 108-111), and Count 11 alleges that Hill used her control over HEMI and HMI to commit a fraud against Marshall, (*see id.* at ¶¶ 112-115).

**B.**      **Application of Rule 9(b) to Allegations of Fraud in the Counterclaim and Third-Party Complaint**

As previously outlined, in assessing whether Marshall's Counterclaim and Third-Party Complaint complies with Rule 9(b), the Court looks for identification of the time, place, and content of each allegedly fraudulent representation, as well as the person responsible for such representation and the consequences of such representation.  *See Koch*, 203 F.3d at 1236.  After careful consideration, the Court holds that Marshall's Counterclaim and Third-Party Complaint does not comport with Rule 9(b) because the time, place, and content of the allegedly fraudulent conduct is not sufficiently alleged therein.

 In response to Hill Defendants' motions to dismiss, Marshall cites paragraphs 14, 16, and 17 as including "*[p]laces, times*, and persons involved in pre-contract misrepresentations." (Combined Resp. to Mots. to Dismiss 13 (emphasis added).)  A review of these paragraphs,

10

however, demonstrates that they fail to contain specific dates or locations corresponding to the alleged fraudulent activity.  Paragraph 14, for example, states that Hill called Marshall "about a year [after 2001]"[13] and "expressed a desire to visit with him in Nebraska about pursuing the Saw." Although a time frame is identified in paragraph 14 – namely, some time during 2002 – this time frame is not sufficiently specific.   *See Koch*, 203 F.3d at1237 (finding allegation that misrepresentations were made "during 1982 and continuing to the present time" insufficient to satisfy Rule 9(b) because it did not "alert the [d]efendants to a sufficiently precise time frame to satisfy Rule 9(b)"); *Near v. Crivello*, 673 F. Supp. 2d 1265, 1284 (D. Kan. 2009) (finding references in plaintiff's complaint to "pre- and post- agreement time frame [were] insufficient" under Rule 9(b)); *Full Faith Church of Love W., Inc. v. Hoover Treated Wood Prods., Inc.*, 224 F. Supp. 2d 1285, 1294 (D. Kan. 2002) (finding complaint did not sufficiently plead time of alleged fraud under Rule 9(b) when complaint stated that misrepresentations were "ongoing" between 1982 and 1988 because said statement "d[id] not alert defendants to a sufficiently precise time frame"); *cf. Near*, 673 F. Supp. 2d at 1284 (finding defendant's counterclaim met pleading requirements under Rule 9(b) when defendant included specific dates – namely, "late July 2008," "August 6 and 7, 2008," and "September 11 and 12, 2008" – of allegedly fraudulent conduct); *McKissick v. Gemstar-TV Guide Intern., Inc.*, 415 F. Supp. 2d 1240, 1247 (N.D. Okla. 2005) (finding plaintiff sufficiently identified time and place of alleged misrepresentations under Rule 9(b) when plaintiff's complaint identified a specific meeting held during the "week of January 17th, 2000" as the time and place in which fraudulent statements were made).  Nor is the vague time frame of paragraph 14 tied to any

---

[13] Paragraph 13 discusses events occurring "sometime in 2001," and paragraph 14 details events occurring "[a]bout a year later."  (Counterclaim and Third-Party Compl. ¶¶ 13, 14.)

11

allegedly fraudulent conduct, as the Counterclaim and Third-Party Complaint fails to allege that any

fraudulent conduct took place at the meeting referenced therein.  Similarly, paragraph 16 states that

"Hill returned to Tulsa and several months later called Marshall in Nebraska, asking him to meet

with her in Wichita, Kansas on a Sunday."  Again, this time frame is not specific and is not tied to

any allegedly fraudulent conduct, as there is no claim that Hill acted fraudulently at the meeting in

Wichita, Kansas.  Finally, there is no mention of a time or place in paragraph 17 – either regarding

the events described in paragraph 17 or allegedly fraudulent conduct.

Therefore, despite Marshall's citations to paragraphs 14, 16, and 17 as detailing the time and

location of the alleged fraud, the Counterclaim and Third-Party Complaint entirely fails to include

*any* specific date or location of the alleged wrongful conduct.  This is simply insufficient under the

standard prescribed by Rule 9(b).  *See Galvin v. McCarthy*, 545 F. Supp. 2d 1176, 1185 (D. Colo.

2008) (holding that plaintiff's "averments do not fully comply with Rule 9(b) because [p]laintiff

fails to state the time and place the alleged misstatements were made"); *Jamieson v. Vatterott Educ.*

*Ctr., Inc.*, 473 F. Supp. 2d 1153, 1157 (D. Kan. 2007) (holding plaintiff failed to provide sufficient

details regarding when alleged fraud took place when plaintiff merely identified a multi-year time

span) (further holding plaintiff failed to adequately allege the place of fraud when there was

"absolutely no allegation about the location of the verbal misrepresentations"); *Regal Ware, Inc. v.*

*Vita Craft Corp.*, 653 F. Supp. 2d 1146, 1154 (D. Kan. 2006) (finding complaint failed to meet Rule

9(b) when "[n]owhere in the complaint does [plaintiff] refer to specific dates or locations where the

misrepresentations occurred").

The Court also finds that certain allegations of fraud are not sufficiently particular as to the

content of the misrepresentations.  For example, paragraph 15 of the Counterclaim and Third-Party

Complaint alleges that Marshall "believed the many misrepresentations made by Hill which led him to believe that she could successfully take over the manufacturing and marketing of the Saw." (Counterclaim and Third-Party Compl. ¶ 15.)  This statement, however, fails to specifically identify what misrepresentation was made that led Marshall to believe Hill was competent to manufacture and market the Saw.  Similarly, paragraph 17 states that "Hill fraudulently induced Marshall to assign the Saw Patent," (*id.* at ¶ 17), but does not provide any information as to what Hill did in order to "fraudulently induce" Marshall.  Absent such information, these allegations are insufficient under Rule 9(b). *See Jamieson*, 473 F. Supp. 2d at 1157 (finding plaintiff failed to provide sufficient details regarding the alleged misrepresentation when plaintiff "only identif[ied] the subject of the misrepresentation without specifically identifying what false representation was made about the subject").

### C.        Appropriate Remedy for Failure to Comply with Rule 9(b)

Marshall's failure to comply with the particularity requirement of Rule 9(b) does not necessarily mandate dismissal of said claims.  As noted by the Tenth Circuit, dismissal for failure to comply with Rule 9(b) is "not a hard and fast rule," and "a trial court has discretion . . . to permit amendment of the defective pleadings." *Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1362-63 (10th Cir. 1989) (stating the trial court has discretion to permit amendment when Rule 9(b) is not satisfied).  In this case, the Court finds amendment, rather than dismissal, to be the more appropriate remedy.  Therefore, the Court denies the motions to dismiss the fraud claims

for failure to comply with Rule 9(b) and will allow Marshall to amend the Counterclaim and Third-Party Complaint to provide specificity regarding the fraud claims contained therein.[14]

## IV.    Conclusion

For the reasons outlined here, Plaintiff's Motion to Dismiss Defendant's Counterclaims and the Third-Party Plaintiff's Complaint (Doc. 37) and Third-Party Defendants' Motion to Dismiss Defendant's Third-Party Petition (Doc. 38) are DENIED.  Marshall is directed to file an Amended Counterclaim and Third-Party Complaint, which alleges fraud with sufficient particularity, within fourteen days of the date of this Order.

**ORDERED THIS 29th day of June, 2010.**

**TERENCE C. KERN**
**UNITED STATES DISTRICT JUDGE**

---

[14]    HMI, Hill, and Weathers Machine additionally argue that such claims are barred by the applicable statute of limitations.  In response, Marshall argues, *inter alia*, that the allegations of the Counterclaim and Third-Party Complaint demonstrate fraudulent concealment, therefore tolling the statute of limitations.  Because the Court is allowing Marshall to amend his pleading so as to provide specificity regarding the fraud allegations contained therein, the Court need not address the statute of limitations argument.  If, upon the filing of the Amended Counterclaim and Third-Party Complaint, HMI, Hill, and Weathers Machine continue to contend that Marshall's allegations present time-barred claims, they can then move to dismiss such claims from the amended pleading.